**Javier Ojeda GOMEZ; Camelia De La Cruz Ojeda; Jose Julian Orozco, Plaintiffs—Appellants,**

v.

**MICHIGAN MILLERS MUTUAL INS. CO., Defendant—Appellee.**

No. 02–55719.

D.C. No. CV–97–00989–AHS.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 7, 2003.

Decided Dec. 19, 2003.

courts of this circuit except as provided by

Sherril Nell Babcock, Esq., Gianelli & Morris, Los Angeles, CA, Andrew S. Albert, Esq., Boudreau Albert & Wohlfeil, San Diego, CA, Robert S. Gerstein, Esq.,

Ninth Circuit Rule 36–3.

Santa Monica, CA, for Plaintiff–Appellants.

Mitchell C. Tilner, Esq., Lisa Perrochet, Esq., Horvitz & Levy, Encino, CA, George Chuang, George Chuang & Associates, El Segundo, CA, Marc R. Jacobs, Esq., Los Angeles, CA, for Defendant–Appellee.

Before RYMER and TALLMAN, Circuit Judges, and LEIGHTON,* District Judge.

## MEMORANDUM **

Javier Ojeda Gomez and his wife, and Jose Gonzalez Oroza (collectively, "officers"), appeal summary judgment in favor of Michigan Millers Mutual Ins. Co. We affirm.

## I

The duty to defend is triggered when an insurer becomes aware of, or a third party pleads, facts giving rise to the potential for coverage under the insuring agreement. *Waller v. Truck Ins. Exch., Inc.,* 11 Cal.4th 1, 19, 44 Cal.Rptr.2d 370, 900 P.2d 619 (1995). The duty to defend is separate from, and broader than, the duty to indemnify; however, there is no duty to defend if there is no possibility of coverage. *Id.*

■ Here, the officers' tort complaint and extrinsic facts uncovered by Michigan Millers during its investigation did not raise a possibility of coverage under the policy's insuring provision for "accidents." Although the complaint alleged negligence-based causes of action, it factually accused John Racich of "drenching [the officers] with gasoline, lighting a match and setting them on fire," and of "making the unprovoked attack." This creates no potential

for coverage as the *conduct* alleged is necessarily non-accidental. *Cf. Quan v. Truck Ins. Exch.,* 67 Cal.App.4th 583, 595–96, 79 Cal.Rptr.2d 134 (1998) (holding that complaint does not raise possibility of coverage for "accidents" even if it includes negligence-based causes of action when it alleges conduct that is not accidental).

Nor did the extrinsic facts uncovered during Michigan Millers's investigation reveal any possibility of coverage. Racich crossed into the United States (where he asked a customs inspector if he could borrow a service weapon), bought a "Big Gulp" soft drink and a can of WD–40, purchased a small amount of gasoline which he put into the "Big Gulp" cup, recrossed the border into Mexico to find the officers, and threw the cup of gasoline onto Gomez and Orozco to blind them. He purposefully took the Bic lighter out of his pocket. The officers were ignited. Racich admitted to the ATF agent who interviewed him just after the attack, and to the insurance investigator, that he intentionally doused the officers with gasoline to blind them in order to retrieve his money. Even accepting the implausible claim that the lighter may have gone off accidentally, the entire attack was not "accidental" because Racich necessarily, and admittedly, intended to cause some degree of serious harm to the officers. *See, e.g., Uhrich v. State Farm Fire & Cas. Co.,* 109 Cal. App.4th 598, 614, 135 Cal.Rptr.2d 131 (2003) ("Acting with intent to cause harm, followed by harm, is no accident."); *Interinsurance Exch. v. Flores,* 45 Cal.App.4th 661, 669, 53 Cal.Rptr.2d 18 (1996) ("When one expects or intends an injury to occur, there is no 'accident.' "); *cf. FMC Corp. v. Plaisted & Cos.,* 61 Cal.App.4th 1132,

---

* The Honorable Ronald B. Leighton, United States District Judge for the Western District of Washington, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

1179–80, 72 Cal.Rptr.2d 467 (1998) (holding, in a property damage case, that if an insured intends to cause some damage, the insurer can deny coverage for all damage).

■ The officers' alternative theories of coverage are unavailing. Even assuming that the possibility of a self-defense claim creates coverage under California law, *Grain Dealers Mut. Ins. Co. v. Marino,* 200 Cal.App.3d 1083, 1088, 246 Cal.Rptr. 410 (1988), that rule is irrelevant here because Racich could not conceivably claim self-defense: he admitted to initiating the attack. *See, e.g., McAfee v. Ricker,* 195 Cal.App.2d 630, 635, 15 Cal.Rptr. 920 (1961) (civil defendant cannot claim self-defense if he initiated the attack). Although Michigan Millers's investigation revealed evidence that Racich had a history of mental problems and may have been "psychologically impaired" at the time of the attack, the investigation also unequivocally showed that Racich intended to commit the *act* of attacking the officers. At most, the mental impairment evidence showed that Racich had psychotic *reasons* for attacking, which is insufficient to create a possibility of coverage under an "accidents" insuring provision. *See Dalrymple v. United Servs. Auto. Ass'n,* 40 Cal. App.4th 497, 522, 46 Cal.Rptr.2d 845 (1995) ("Although the evidence showed [the insured] had psychotic *reasons* for shooting, it was a reasonable interpretation of the evidence to conclude *the shooting itself was calculated and deliberate* and thus not accidental within the meaning of the policy provision occurrence.") (emphases added). And Michigan Millers's decision to increase its cash reserves has no bearing on the duty to defend. *See, e.g., Lipton v. Superior Court,* 48 Cal.App.4th 1599, 1614, 56 Cal.Rptr.2d 341 (1996).

## II

The officers' claim that Michigan Millers should be precluded from raising an "ad-

vice of counsel" defense to their bad-faith denial cause of action is moot because there was no duty to defend. *See Waller,* 11 Cal.4th at 35, 44 Cal.Rptr.2d 370, 900 P.2d 619 (viability of bad-faith denial cause of action is predicated on the existence of a duty to defend). Likewise, the officers' claim that venue should prospectively be shifted to the Western Division of the Central District is moot because there is no need to remand for further proceedings.

AFFIRMED.